*Electronically Filed*
UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
AT BOWLING GREEN

| | |
|---|---|
| UNITED STATES OF AMERICA, )<br>)<br>    PLAINTIFF, )<br>)<br>VS. )<br>)<br>JAMES CLARK, )<br>)<br>    DEFENDANT. )<br>) | Case No: 1:23-cr-37-GNS |

**DEFENDANT'S SENTENCING MEMORANDUM
AND MOTION FOR JUDICIAL RECOMMENDATION
OF PLACEMENT AT FCI MARION, ILLINOIS**

Comes the Defendant, James Clark, by and through counsel, and for his sentencing memorandum to the Honorable Court, in which he respectfully requests a judicial recommendation of placement at FCI Marion in Marion, Illinois, states as follows:

**INTRODUCTION**

James "Jimmy" Clark comes before this Court for sentencing having entered a binding plea agreement pursuant to Federal Rule of Criminal Procedure 11(c)(1)(C), accepting a term of twenty-seven and one-half (27.5) years of imprisonment. By accepting that sentence, Mr. Clark accepted full responsibility for his conduct and spared the Government, this Court, and the victims the burden of trial.

This memorandum does not ask the Court to impose a lesser sentence. That question has been resolved by the parties. Rather, it asks the Court to exercise one of the few meaningful levers

available at this stage: a judicial recommendation to the Bureau of Prisons (BOP) that Mr. Clark be designated to the Federal Correctional Institution at Marion, Illinois ("FCI Marion"). Although a judicial recommendation is not binding upon the BOP, the Bureau routinely accords it substantial weight where the recommendation is consistent with institutional security requirements.

FCI Marion is a Medium-security facility, which is consistent with Mr. Clark's independently calculated BOP security classification. It houses one of the BOP's Sex Offender Management Programs (SOMP), providing the evidence-based treatment that Mr. Clark has specifically identified and committed to pursuing. It is an environment structured to house and treat inmates of Mr. Clark's offense type, making it safer for the inmate, for staff, and for the institution as a whole. A judicial recommendation carries real, practical weight in the BOP designation process. Mr. Clark respectfully asks the Honorable Court to make this recommendation.

## BACKGROUND OF JAMES CLARK

Mr. Clark does not offer the following as an excuse. He is acutely aware that his conduct caused real harm to real people, and he has accepted a sentence of nearly three decades that reflects that gravity. He asks only that this Court have a complete picture of the man before it. Mr. Clark retained through counsel a mitigation specialist, Mr. Marc Caudel, who conducted in-person interviews with Mr. Clark's mother, Kandy Clutter, and his siblings. According to those interviews, Mr. Clark's childhood was defined by severe trauma and the repeated failure of every system that should have protected him.

Mr. Clark was the oldest of five children raised in a chaotic household marked by abusive and absent father figures, poverty, and chronic DCS involvement. When he was approximately ten years old, a man named Larry, his aunt's boyfriend, systematically groomed and sexually

abused multiple children in the household, including Mr. Clark. Three siblings have independently corroborated the abuse. When his mother reported it, Larry was never charged and never prosecuted.

Mr. Clark, or "Jimmy" as his family calls him, received no sustained therapeutic intervention. He was diagnosed with ADHD as a young child, placed in and out of psychiatric facilities throughout his adolescence, and cycled through DCS placements and specialty programs. None of these programs provided the comprehensive, sustained treatment he desperately needed. The possibility that he carries an undiagnosed autism spectrum condition has never been formally evaluated, though his sister Sahvannah was diagnosed as an adult in 2019, and his mother (a nurse with medical training) described repeatedly telling clinicians that something "deeper" was going on with Jimmy, only to be told it was easier to label him "troubled."

Mr. Clark entered a binding plea agreement accepting 27.5 years of imprisonment. He did not go to trial. He did not require victims to testify. And while detained pretrial, he prepared a specific, research-grounded treatment plan for himself. In a written memorandum to mitigation and placement experts retained in this case, he identified by name the programs he intends to pursue if allowed the opportunity of being placed at FCI Marion. This list included Cognitive Behavioral Therapy, psychosexual therapy, trauma-informed care, and the BRAVE Program. As part of this process, he reviewed recidivism literature to understand his own risk profile. He is not asking this Court for mercy on his sentence. He is asking for placement in a facility where the work of rehabilitation can actually begin. That is the narrow, concrete request this memorandum advances.

**ARGUMENT FOR RECOMMENDATION OF FCI MARION**

**I.  Mr. Clark's BOP Security Classification Confirms That FCI Marion Is an Appropriate Placement**

Defense counsel retained Shannon L. Race, a former Operations Manager at the BOP's Designation and Sentence Computation Center (DSCC) in Grand Prairie, Texas (the central office responsible for all BOP designation decisions nationwide), to help identify proper placement for Mr. Clark. Ms. Race spent 25 years with the Federal Bureau of Prisons, retiring in good standing in January 2021. She is recognized as a subject matter expert in inmate classification, designation, and sentence computation. Her full declaration and curriculum vitae are attached hereto.[1]

Based on her review of the Presentence Investigation Report, Ms. Race calculated a security point total for Mr. Clark of 18 points. Under BOP Policy CPD/CPB No. P5100.08, that score falls within the Medium-security range (16–23 points). Two Public Safety Factors independently reinforce this classification:

> **Sex Offender (PSF-F):** As a male inmate whose offense conduct involves a sex offense, Mr. Clark carries this Public Safety Factor. It renders him ineligible for Minimum-security (Camp) placement and mandates at least Low-security housing.
>
> **Sentence Length (PSF-I):** With more than 20 years remaining to serve at the outset of his sentence, this PSF independently mandates at least Medium-security placement regardless of his security point score, until his time remaining falls below the 20-year threshold.

It is clear through her research and computation that Mr. Clark is a Medium-security inmate. FCI Marion is a Medium-security facility. The judicial recommendation sought here does

---
[1] Exhibit 1.

not ask the BOP to place Mr. Clark below his security level or outside the parameters of its own classification system. It asks the BOP to choose, among its Medium-security facilities, one that offers him the treatment he needs, and one that is in his home region. That is exactly the kind of recommendation BOP policy is designed to accommodate.

**II.  FCI Marion Offers Specialized Programming That Serves the Statutory Goals of Sentencing**

FCI Marion operates one of the BOP's Sex Offender Management Programs (SOMP), designed specifically for inmates convicted of sexual offenses. The program addresses cognitive distortions, sexual deviance, victim empathy, and relapse prevention. Each of these initiatives are directly relevant to Mr. Clark's clinical history and treatment needs.

The case for FCI Marion rests on five independent grounds.

**First, the security level matches.**  FCI Marion is medium security. Mr. Clark has been independently classified as a Medium-security inmate by a 25-year BOP expert applying the BOP's own classification criteria. A judicial recommendation that aligns with the Bureau's own security matrix is one the BOP has both the authority and the institutional incentive to follow.

**Second, the treatment program addresses Mr. Clark's specific clinical needs.**  Mr. Clark's offense conduct, his documented history of childhood sexual victimization, and the mental health deficits that have followed him throughout his life all point toward a need for evidence-based psychosexual treatment and trauma-informed care. The SOMP at FCI Marion provides exactly that. Placement at a general medium security facility without SOMP access would sentence Mr. Clark to 27 years of incarceration without treatment, which is the very situation the empirical literature demonstrates is most likely to compromise public safety upon his release.

**Third, FCI Marion provides a safer environment for Mr. Clark personally.** Ms. Race has documented in her expert declaration that the BOP itself recognizes that individuals with a history of childhood sexual victimization face elevated risk of predatory victimization in general-population Medium and High-security settings. FCI Marion's SOMP unit, by contrast, houses a similarly situated population in a structured, program-focused environment that materially reduces that risk.

**Fourth, Mr. Clark has specifically committed to the programming available at FCI Marion.** Mr. Clark's designed treatment plan (CBT, psychosexual therapy, trauma-informed care, and the BRAVE Program) maps directly onto the programming available at Marion.

**Fifth, retained forensic psychologist, Dr. Eric Drogin, agrees.** Defense counsel also retained Dr. Eric Y. Drogin, a forensic psychologist, to evaluate Mr. Clark's psychiatric history and treatment needs in connection with this matter. Dr. Drogin has reviewed the programming available at FCI Marion and has consulted with Shannon Race's team at Prisonology regarding the facility's suitability for Mr. Clark's specific classification and clinical profile. Based on that review, Dr. Drogin concurs that placement at FCI Marion would be beneficial to Mr. Clark. [2]

Mr. Clark presents with a documented history of childhood sexual victimization, unaddressed neurodevelopmental concerns, and a lifetime of inadequate psychiatric intervention. FCI Marion's SOMP and associated mental health programming directly address each of those deficits. Critically, Dr. Drogin has noted that Mr. Clark possesses something that cannot be manufactured or court-ordered: a genuine desire to get better. Placing Mr. Clark at a facility equipped to meet him where that motivation lives is the most effective use of the sentence this Court is about to impose.

---

[2] Exhibit 2.

### III.  The Section 3553(a) Factors Support the Recommendation for FCI Marion

The nature and circumstances of the offense are serious. Mr. Clark does not minimize them. He has accepted nearly three decades of imprisonment that reflect their gravity. At the same time, the history and characteristics of the defendant are equally before this Court: a man who was himself sexually violated as a child; who never received adequate psychiatric or therapeutic care; who may carry an undiagnosed neurodevelopmental condition; and who, despite everything, has worked hard at researching and preparing for his own rehabilitation.

The need to protect the public from further crimes of the defendant is best served not by an untreated 27-year sentence, but by a sentence that uses those years to equip Mr. Clark with the cognitive and psychological tools to ensure that when he is eventually released, he presents the lowest possible risk. The need to provide correctional treatment in the most effective manner, § 3553(a)(2)(D), independently supports this recommendation as an affirmative sentencing goal.

### CONCLUSION

James Clark has accepted a sentence of 330 months. He has not contested his responsibility. He has not required victims to appear. He has spent his time in pretrial custody researching in earnest the treatment programs he believes are necessary to make him a safe person when he eventually walks out of federal custody. He comes from a background of profound trauma and systemic failure. But he comes to this Court with something he has never previously had: a clear, specific, clinically informed plan for his own rehabilitation.

The recommendation for FCI Marion costs this Court and the United States nothing. It is consistent with the BOP's own security classification for Mr. Clark. It directs him to a facility that exists, has the programs Mr. Clark desperately needs, and is designed for inmates exactly like him.

Mr. Clark has a great deal of time to spend in the prison system, and this would allow him to use that time to become a better person and citizen, who is ready to become a safe, contributing member of society upon his release.

Lastly, due to previous issues documented by the PSR and well known amongst the US Marshal's office with the Grayson County Detention Center, Mr. Clark respectfully requests direct transport from the Bourbon County Detention Center to whichever prison he is designated. Mr. Clark has a genuine fear for his safety should he return to Grayson County or Oklahoma City for holding. It should be noted that Mr. Clark has been at the Bourbon County Detention Center for two years without issue.

**WHEREFORE**, James Clark, by counsel, respectfully requests that this Honorable Court:

1. Impose the agreed sentence of 27.5 years as required by the Rule 11(c)(1)(C) plea agreement; and
2. Include in the Judgment and Commitment Order a recommendation to the Bureau of Prisons that Mr. Clark be designated to the Federal Correctional Institution at Marion, Illinois, for placement in the Sex Offender Management Program (SOMP), and a recommendation that he be transported directly to Marion from the Bourbon County Detention Center.

        Respectfully submitted,

        ***/s/ M. Ryan Robey***
        Michael Ryan Robey
        Rhonda N. Iuliano
        Cooley Iuliano Robey, PLLC
        The Lexington Building
        201 West Short Street, Suite 500
        Lexington, Kentucky 40507
        Telephone: (859) 258-2697
        ryan@cirlegal.com
        nicole@cirlegal.com
        *Counsel for Defendant James Clark*

## CERTIFICATE OF SERVICE

    I hereby certify that on this 5th day of March, 2026, a true and accurate copy of the foregoing was electronically filed with the Clerk of Court via the CM/ECF system, which will provide electronic notice to all counsel of record, including:

    Danielle Yannelli
    Assistant United States Attorney

        ***/s/ M. Ryan Robey***
        Michael Ryan Robey
        *Counsel for Defendant*